UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SCOTT SHUMATE,

     Plaintiff,

v.                           Case No.:  2:23-cv-427-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff Scott Shumate seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

A.    **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.   Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v.*

*Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C. Procedural History

On November 9, 2018, Plaintiff applied for a period of disability and disability insurance benefits, and for supplemental security income, alleging disability beginning on July 1, 2018. (Tr. 102, 103, 230-40). The applications were denied

initially and on reconsideration. (Tr. 102, 103, 138, 139). Plaintiff requested a hearing and on September 2, 2020, a hearing was held before Administrative Law Judge Maria Northington ("ALJ"). (Tr. 39-70). On September 18, 2020, the ALJ entered a decision finding Plaintiff had not been under a disability from July 1, 2018, through the date of the decision. (Tr. 15-33). Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on January 14, 2021. (Tr. 1-5). Plaintiff appealed to the United States District Court and the Court reversed the decision and remanded the action to the Commissioner for further administrative proceedings. (Tr. 1160-65).

On remand, the Appeals Council vacated the final decision of the Commissioner and remanded the action to an administrative law judge for further proceedings. (Tr. 1170). On August 1, 2022 and February 8, 2023, the ALJ conducted hearings. (Tr. 1080-1126). On April 11, 2023, the ALJ entered a decision finding Plaintiff had not been under a disability from July 1, 2018, through the date of the decision. (Tr. 1056-71). Plaintiff began this action by Complaint (Doc. 1) filed on June 12, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 14).

### D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2024. (Tr. 1060). At step one of the

sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2018, the alleged onset date. (Tr. 1060). The ALJ noted that Plaintiff worked after the alleged disability onset date, but this work activity did not rise to the level of substantial gainful employment. (Tr. 1060). At step two, the ALJ found that Plaintiff had the following severe impairments: "anxiety, depression, posttraumatic stress disorder (PTSD), THC dependence." (Tr. 1060). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 1061).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work with the ability to occasionally lift and/or carry up to 20 pounds as defined in the regulations, as well as, lift/carry 10 pounds frequently. This includes sedentary work as defined in the regulations. The claimant has no identifiable limitations for sitting, standing and/or walking in an eight-hour workday. The claimant has no postural limitations except no climbing of ropes and scaffolds, but ladders are not affected. The claimant retains the capacity to understand, remember and carry-out simple instructions and perform simple routine tasks as consistent with unskilled work.

(Tr. 1063).

At step four, the ALJ determined that Plaintiff could perform his past relevant work as an office helper. (Tr. 1068-69). The ALJ also found that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 1068).

Alternatively, the ALJ proceeded to step five of the sequential evaluation process and found that considering Plaintiff's age (47 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 1069). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1)   Routing clerk, DOT 222.587-038, light, SVP 2[1]

(2)   Order caller, DOT 209.667-014, light, SVP 2

(3)   Document preparer, DOT 249.587-018, sedentary, SVP 2

(4)   Call-out operator, DOT 237.367-014, sedentary, SVP 2

(Tr. 1069-70). The ALJ concluded that Plaintiff had not been under a disability from July 1, 2018, through the date of the decision. (Tr. 1070).

## II.   Analysis

On appeal, Plaintiff raises five issues:

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

(1)    Whether the ALJ erred in finding Plaintiff had a moderate limitations in concentrating, persisting, or maintaining pace yet failed to reflect this limitation in the RFC;

(2)    Whether the ALJ erred in finding Plaintiff could perform his past relevant work as an office helper given that this occupation carries a temperament of V;

(3)    Whether the ALJ erred in finding Plaintiff could perform other work that exists in significant numbers in the national economy;

(4)    Whether the ALJ erred in finding Plaintiff could perform work with an SPV level of 2, given the language in the Explanations of Determination; and

(5)    Whether the ALJ erred in failing to address the severity of certain impairments that she found severe in a prior decision and in failing to include certain limitations from the prior decision, which arguably showed that the ALJ was not impartial.

(Doc. 23, p. 1-2).

**A.    Moderate Limitations in Concentration, Persistence, or Pace**

Plaintiff contends that the ALJ found Plaintiff had moderate limitations in concentration, persistence, or maintaining pace, but erred in failed to reflect this limitation in the RFC assessment. (Doc. 23, p. 7, 16). Plaintiff claims that even though the ALJ found these limitations, in the RFC assessment the ALJ only limited Plaintiff as follows: "retains the capacity to understand, remember and carry-out simple instructions and perform simple routine tasks as consistent with unskilled work." (Doc. 23, p. 16; Tr. 1063). Plaintiff argues that this limitation applies to the

ability to understand, remember, or apply information, not the ability to maintain concentration, persistence, or pace. (Doc. 23, p. 16).

Prior to step four, the ALJ must assess Plaintiff's RFC, the most he can do despite his limitations. 20 C.F.R. § 404.1545(a). It consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). An ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the action. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (3). The ALJ must consider *all* of a claimant's medically determinable impairments, including those that are not "severe." 20 C.F.R. § 404.1545(a)(2); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019). "The ALJ makes this determination by considering a claimant's physical, mental, and other abilities affected by the impairment." *Id.* (citing 20 C.F.R. § 404.1545(b)-(d)).

At step five of the sequential evaluation, if the ALJ finds a claimant unable to perform his past relevant work, the ALJ must determine whether jobs exist in significant numbers in the national economy that an individual with the plaintiff's limitations can perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). To make this determination, an ALJ may obtain the testimony of a vocational expert. *Id*. For the vocational expert's opinion to constitute substantial

evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). "If the ALJ presents the vocational expert with incomplete hypothetical questions, the vocational expert's testimony will not constitute substantial evidence." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But an ALJ need not include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

In assessing the RFC for mental limitations, the ALJ applied the "paragraph B" criteria, finding Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace. (Tr. 1061-62). In the other areas, the ALJ found Plaintiff had mild or no limitations. (Tr. 1062-63). The ALJ noted that Plaintiff's attention and concentration were generally intact when he complied with his medication regimen. (Tr. 1062). She also found Plaintiff able to read, maintain a part-time work schedule, and complete single and multistep directives. (Tr. 1062). The ALJ then summarized treatment notes from mental health providers that supported this limitation. (Tr. 1062). Later in the decision, the ALJ determined:

> Notably, the claimant never sought, received, or required emergency or inpatient care for psychiatric or psychological distress during the relevant period. The claimant also continued to engage in a wide range of activities of daily living including

personal care, preparing meals, and completing household
chores within his physical tolerances. Claimant lived amicably
with others. He engaged in regular part-time work. He engaged
in exercise. He maintained a regular schedule and completed
paperwork independently. Claimant was able to read. All the
foregoing suggest that the claimant is not as limited as is
otherwise alleged and any psychological limitations supported
by the foregoing generally mild psychological abnormalities
being largely controlled with the use of ongoing medication
and treatment are adequately accounted for through limitation
to simple routine tasks as outlined in the above residual
functional capacity.

(Tr. 1067). Thus, the ALJ accounted for Plaintiff's moderate limitations in

concentrating persisting, or maintaining pace, in the RFC by limiting Plaintiff to

understanding, remembering, and carryout simple instructions and performing

simple routine tasks as consistent with unskilled work.

Several unpublished decisions in the Eleventh Circuit address whether

limiting an individual to understanding and carrying out simple instructions and

performing simple routine tasks sufficiently accounts for a moderate limitation in

maintaining concentration, persistence, or pace when the medical evidence supports

such work. *Zekanovic v. Comm'r of Soc. Sec.*, No. 8:22-cv-1968-JSS, 2023 WL

4418500, at *4 (M.D. Fla. July 10, 2023). These opinions support the ALJ's findings

here. *Id.* (citing *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir.

2017) ("finding that '[b]ecause the medical evidence showed that [the claimant]

could perform simple, routine tasks despite her limitations in concentration,

persistence, and pace, the ALJ's limiting of [the claimant's RFC] to unskilled work

sufficiently accounted for her moderate difficulties in concentration, persistence, and pace'"); *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 713 (11th Cir. 2015) ("'[T]he ALJ accounted for [the claimant's] moderate limitations in concentration, persistence, or pace by limiting him to simple, routine, and repetitive tasks, which medical evidence showed he could perform.'"); *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 907 (11th Cir. 2013) ("'An ALJ's hypothetical question restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence, and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite limitations in concentration, persistence, and pace.'")).

In addition, in the hypothetical posed to the vocational expert, the ALJ included the following limitation: an "[i]ndividual [who] retains the capacity to understand, remember and carry out simple instructions and perform simple, routine tasks as consistent with unskilled work." (Tr. 1118). In sum, the ALJ found Plaintiff had moderate limitations in maintaining concentration, persistence, and pace, and accounted for these limitations in the RFC assessment. The ALJ then included these limitations in the hypothetical to the vocational expert and properly relied on the vocational expert's testimony in finding that there were a significant number of jobs in the national economy that Plaintiff could perform. Substantial evidence supports

the ALJ's RFC assessment, hypothetical to the vocational expert, and reliance on the vocational expert's testimony.

## B.    Past Relevant Work, Temperament V

Plaintiff contends that the ALJ limited Plaintiff to carrying out simple instructions and performing simple routine tasks, yet found Plaintiff able to perform his past relevant work as an office helper, which carries a temperament of "'V – Performing a variety of tasks, often changing from one task to another of a different nature without loss of efficiency or composure.'" (Doc. 23, p. 17). Plaintiff argues that this temperament in inconsistent with simple instructions and simple routine tasks. (Doc. 23, p. 17).

In support, Plaintiff attached a Detailed Job Specialty Report from Job Browser Pro by SkillTRAN, not a DOT job description. (*See* Doc. 23-1, Exh. A). As the Commissioner points out, this Court had rejected similar arguments based on temperament information from SkillTRAN/Job Browser Pro or sources other than the DOT. (Doc. 25, p. 10 (citing *Horton v. Kijakazi*, No. 8:21-cv-435-WFJ-CPT, 2022 WL 4229338, at *11 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 8:21-cv-435-WFJ-SPF, 2022 WL 3593917 (M.D. Fla. Aug. 23, 2022) ("The Plaintiff, however, does not submit any legal authority establishing that the ALJ or the VE must consider SkillTRAN as a vocational resource, and there is at least some case law rejecting that position.")). Nor does the DOT contain

requirements for temperament for the officer help job. (*See* DOT No. 239.567-010, 1991 WL 67232 (office helper)). Thus, remand in unnecessary as the Court finds no basis for error.

### C.    Other Work

Plaintiff contends that while the ALJ limited Plaintiff to carrying out simple instructions and performing simple routine tasks as consistent with unskilled work, the ALJ still listed jobs with a reasoning level of 3, which conflicts with these limitations. (Doc. 23, p. 21-24). Plaintiff claims that both the jobs of document preparer and call-out operative have reasoning levels of 3 and therefore fall outside the RFC assessment. (Doc. 23, p. 22). The Court agrees that both these occupations require reasoning levels of 3. *See* DOT No. 237.367-014, 1991 WL 672186 (call-out operator); DOT No. 249.587-018, 1991 WL 672349 (document preparer, microfilming).

For any conflict at step five between limitations in an RFC and job requirements as listed in the DOT, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018) (quoting SSR 00-4p, 2000 WL 1898704)). An ALJ must ask the vocational expert to identify and explain any conflict between his or her testimony and the DOT. *Id.* at 1363. Moreover, "the

ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363.

In *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309 (11th Cir. 2021), the Eleventh Circuit evaluated whether reasoning level three is consistent with a limitation to simple, routine tasks. The Court held that there is an apparent conflict between an RFC limitation to simple, routine, and repetitive tasks and level 3 reasoning. *Id.* at 1317. The Court added that "[t]his does not mean that there is an actual conflict or that an ALJ is categorically prohibited from including a job with level 3 reasoning in the step five analysis for a claimant with such a limitation. It does mean that the ALJ is required to address the apparent conflict and provide a reasonable explanation for her determination." *Id.*

Here, the RFC contained a limitation to understanding, remembering, and carry-out simple instructions and performing simple routine tasks as consistent with unskilled work, but the ALJ failed to address this apparent conflict with the job of document preparer and call-out operator, which require level 3 reasoning. Thus, the ALJ erred in listing these jobs without identifying and resolving the apparent conflict. But the ALJ's failure to address the apparent conflict does not end the matter. *Id.* A court must consider whether the error was harmless. *Id.*

Indeed, any arguable error is harmless. The ALJ found Plaintiff could perform his past relevant work as an office helper at step four. Thus, the ALJ was not required

to proceed to step five and any arguable error at step five is harmless. Accordingly, remand is not warranted on this issue.

### D.    Explanation of Determination

Plaintiff contends that the SSA repeatedly advised him that his condition may limit his ability to perform his past work, but he could perform work which required only a very short, on-the-job training period. (Doc. 23, p. 25 (citing Tr. 147, 151, 162, 169)). Plaintiff argues that his past relevant work of office helper and the other jobs listed in the decision are SVP 2 level, which conflicts with these advisories entitled, Explanations of Determination. (Doc. 23, p. 25-28).

Explanations of Determination are prepared by disability examiners. *Martinez v. Kijakazi*, No. 8:20-cv-1025-TPB-AEP, 2021 WL 4482616, at *14 (M.D. Fla. Aug. 23, 2021), *report and recommendation adopted*, No. 8:20-cv-1025-TPB-AEP, 2021 WL 4478248 (M.D. Fla. Sept. 30, 2021) (citing SSA Program Operations Manual System ("POMS") DI 24501.001B(1)(d)(1)-(2)). "Notably, the SSA considers findings made by a state agency disability examiner at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether a claimant is disabled to constitute evidence that is 'inherently neither valuable nor persuasive.'" *Id.* (citing 20 C.F.R. § 404.1520b(c)(2)). And under the regulations, an ALJ need not provide any analysis about how she considered such evidence in rendering a decision. *Id.* (citing 20 C.F.R. § 404.1520b(c)). Thus, the

ALJ was not required to consider the Explanations of Determination in rendering the decision and remand is not warranted.

### E.     Prior Decision

Plaintiff argues that the ALJ erred in failing to adopt her findings from a prior September 18, 2020 decision. (Doc. 23, p. 32-34). Specifically, Plaintiff claims the ALJ should have found three additional severe impairments (left ulnar sensory neuropathy, left carpal tunnel syndrome, and cervical and lumbar degenerative disc disease), and at least seven additional restrictions in the RFC assessment. Plaintiff claims that these omissions from the most recent decision "dramatically altered Plaintiff's case for disability and indicate that the ALJ was not an impartial or neutral decisionmaker. (Doc. 23, p. 33).

The Eleventh Circuit recently addressed a similar argument. In *Weidner v. Comm'r of Soc. Sec.*, 81 F.4th 1341, 1343 (11th Cir. 2023), Plaintiff appealed the district court's affirmance of the Commissioner's denial of his claim for disability insurance benefits and supplemental security income. He argued that the ALJ erred on remand by reconsidering an RFC assessment, after the prior decision had been vacated, in violation of the law-of-the-case doctrine and the mandate rule. *Id.* In affirming the lower court's decision, the Eleventh Circuit held that both doctrines only apply to an earlier decision that is still extant. *Id.* at 1345. "But vacated

decisions 'are officially gone. They have no legal effect whatever. They are void.'" *Id.* (quoting *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002)).

In this case, after the District Court reversed the decision and remanded the action, and the Appeals Council vacated the final decision of the Commissioner and remanded the case for further administrative proceedings, including offering the claimant the opportunity for a hearing, and "tak[ing] any further action needed to complete the administrative record and issue a new decision." (Tr. 117-71). Neither the Appeals Council's Order Remanding Case to Administrative Judge nor the Order remanding the action by the District Court made any binding factual findings. (Tr. 1163-64, 1170-71). Thus, the ALJ properly reconsidered the medical and other evidence of record, conducted another hearing, and issued a new decision without relying on or adopting prior findings.

As to bias, the "impartiality of the ALJ is integral to the integrity of the system." *Hinson v. Colvin*, No. 2:14-cv-222-FtM-DNF, 2014 WL 6769341, at *3 (M.D. Fla. Dec. 1, 2014) (quoting *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996)). Still, courts "start from the presumption that administrative adjudicators, such as ALJs are unbiased." *Id.* (citing *Schweiker v. McClure*, 456 U.S. 188, 195-96, (1982)). "[A] claimant challenging this presumption carries the burden of proving otherwise." *Strople v. Colvin*, No. 3:13-cv-1518-J-34MCR, 2015 WL 1470866, at *7 (M.D. Fla. Mar. 31, 2015). Plaintiff failed to establish bias simply

because the ALJ made different findings in the recent decision. Remand is not warranted on this issue.

### III.   Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on July 15, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties